UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELLIOT GUERIN AND GRACE GUERIN | CIVIL ACTION |
| | NO: |
| VS. | Judge |
| | Mag. |
| DEPUY ORTHOPAEDICS, INC, and, JOHNSON & JOHNSON SERVICES, INC. | JURY TRIAL |

**************************************************************

# COMPLAINT

**NOW COME** Plaintiffs, Elliot Guerin and Grace Guerin, who sue defendants Depuy Orthopaedics, Inc. and Johnson & Johnson Services, Inc. ("Defendants") foreign corporations, and allege:

1. This is an action for damages that exceeds $75,000.00

2. At all times relevant hereto plaintiffs were residents of New Orleans, Louisiana.

3. At all times relevant to this action, defendant DEPUY ORTHOPAEDICS, INC. ("Depuy"), was incorporated in the State of Indiana with its principal place of business in the State of Indiana. Defendant JOHNSON & JOHNSON SERVICES, Inc., is and at all times relevant to this Complaint was, a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey, 08933.

4. Plaintiffs' damages in this matter accrued in Louisiana.

1

5. At all times relevant to this Complaint, defendants regularly engaged in business in the State of Louisiana.

6. At all times relevant to this action, defendant Depuy designed, manufactured, labeled, distributed, and sold the product at issue in this matter and instructed physicians regarding the advantages of and their method of implanting this product.

7. In 2005 defendant Depuy began selling Depuy ASR Acetabular Cup ("ASR Cups") in the United States to be used for total hip replacement surgeries.

8. At that time defendant Depuy began an intensive campaign to promote the use of ASR Cups by orthopedic surgeons, including plaintiff's orthopedic surgeon Dr. Gregor Hoffman.

9. Upon information and belief, defendant Depuy subsequently instructed and trained Dr. Gregor Hoffman in the use of and implementation of ASR Cups.

10. Defendant Depuy manufactured the Depuy ASR Acetabular Cup, in addition to other components, which were subsequently implanted into the body of Elliot Guerin.

11. Upon information and belief, using his training and instruction provided by Depuy, Dr. Hoffman implanted a Depuy ASR Acetabular Cup, into the right hip of Elliot Guerin in December 2008.

12. Following the surgery, plaintiff's wounds healed without infection, x-rays showed the hip replacement to be properly positioned and affixed, and the hip replacement suffered no unexpected impacts.

13. Despite these ideal conditions for a hip replacement, following the surgery, Elliot Guerin, experienced pain and extreme weakness in hip and quadriceps.

14. During this time, defendant Depuy was aware of the high rate of failures of its ASR Cups, but did not provide this information to Dr. Hoffman.

15. As a result of defendant Depuy failing to provide this crucial information to plaintiff's orthopedic surgeon, Dr. Hoffman had little reason to suspect that the source of plaintiff's ongoing pain and weakness was the result of the failure of the ASR Cups.

16. Elliot Guerin suffers today from the pain associated with the implementation and probable failure of both of the ASR cups manufactured by Defendant.

17. In mid 2009 Depuy announced that it would be phasing out sales of the Depuy ASR Acetabular Cup worldwide by the end of 2010 due to decreasing sales.

18. On March 6, 2010, Depuy sent a letter to doctors warning that data from the Australian medical device registry showed that the Depuy ASR Acetabular Cup had a higher-than-expected failure rate when used in traditional hip replacements, especially in patients of smaller statue such as women or patients with weak bones.

19. Depuy did not provide this information in a timely manner and therefore the warning was too late to provide plaintiff's surgeon the valuable information needed to ensure proper care.

20. In an article published in the New York Times on March 10, 2010, Dr. Stephen Graves, the director of the Australian medical device registry, was quoted as saying that the data had shown for some time that the ASR had been failing early at a significantly higher rate than some competitors' devices. Of the withdrawal of the ASR from the market by Depuy, Dr. Graves was quoted as saying, "it is way too late."

21. The March 10, 2010, New York Times article also stated that:

> Several orthopedic specialists said that they believed the design of the ASR Cup, which is shallower than some similar devices was at the heart of the implant's problem. For example, Dr. Harlan C. Amstutz, an orthopedic surgeon in Los Angeles and an implant designer who is a consultant for Wright Medical Technology, a competing orthopedic company said he believed the design was prone to problems. "It may not be a Toyota, but it is not good," Dr. Amstutz said.

22. The March 10, 2010, New York Times article also quoted the Depuy ASR's co-developer, Dr. Thomas P. Schmalzried, an orthopedic specialist in Los Angeles, as saying that he and Depuy officials realized within the last two years that the ASR Cups might be more of a challenge to implant properly that competing cups. "The window for component position that

4

is consistent for good, long-term clinical function is smaller for the ASR cup," than for other cups, said Dr. Schmalzried.

23. The March 10, 2010, New York Times article also said that in early 2009, Depuy sent a brochure to doctors on the importance of proper cup positioning for all implants, but did not address any specific concerns about the ASR.

24. The Depuy ASR prosthesis was approved for sale in the United States by the U.S. Food and Drug Administration by means of an abbreviated process, based upon representations of Depuy that the device was substantially equivalent to other devices previously approved by the FDA, and resultantly the device was not required to undergo clinical trials.

25. On August 6, 2015 Dr. Gregor Hoffman performed a revision surgery on Plaintiff's right hip.

## COUNT ONE
## NEGLIGENCE OF DEPUY ORTHOPAEDICS, INC.

26. Plaintiff re-alleges paragraphs 1-25 as if fully stated herein.

27. Defendants as the manufacturer of the Depuy ASR Acetabular Cup, owed a duty to plaintiff to exercise reasonable care in the design, manufacture, labeling, and distribution of the device to insure that it was fit for its intended use.

28. Defendant Depuy, as the manufacturer of the Depuy ASR Acetabular Cup, owed a duty to plaintiff to timely inform his orthopedic surgeon of the significant problems being experienced with the product.

29. Defendant Depuy Orthopaedics, Inc., in breach of the duties described above, negligently and carelessly designed, manufactured, labeled, and distributed the Depuy ASR Acetabular Cup implanted in plaintiff.

30. As a direct and proximate result of the conduct of defendant Depuy, the Depuy ASR Acetabular Cup was unfit for its intended use and plaintiff needlessly suffered pain and weakness.

31. As a direct and proximate cause of this breach, plaintiff has suffered severe physical distress and injury, emotional distress and injury, emotional distress and injury; incurred medical and other expenses; suffered shame, humiliation and the inability to lead a normal life; and he suffered loss of enjoyment of life. His injuries and losses are permanent in nature and plaintiff will continue to suffer such losses in the future.

WHEREFORE, plaintiffs demand judgment against defendants for compensatory damages and any other relief the Court deems just and proper.

## COUNT TWO
## STRICT LIABILITY OF DEPUY ORTHOPAEDICS, INC.

32. Plaintiff re-alleges paragraphs 1-31 as if fully stated herein.

33. At the time that defendant Depuy manufactured and sold the Depuy ASR Acetabular Cup, it contained a defect that made it unreasonably dangerous and unfit for its intended use.

34. The product reached plaintiff without substantial change in the condition in which it was sold.

35. As a direct and proximate cause of this breach, plaintiff has suffered sever physical distress and injury, emotional distress and injury; incurred medical and other expenses; suffered shame, humiliation and the inability to lead a normal life; and he has suffered loss of enjoyment of life. His injuries and losses are permanent in nature and plaintiff will continue to suffer such losses in the future.

**WHEREFORE**, plaintiffs demand judgment against defendants for compensatory damages and any other relief that the Court deems just and proper.

## COUNT THREE
## BREACH OF IMPLIED WARRANTY OF DEPUY ORTHOPAEDICS, INC.

36. Plaintiff re-alleges paragraphs 1-35 as if fully stated herein.

37. Defendant Depuy Orthopaedic, Inc., designed manufactured, labeled, distributed and sold the Depuy ASR Acetabular Cup at issue in this case.

38. Defendant Depuy impliedly warranted that the product was reasonably fit for its intended use as hip joint replacement system component.

39. Plaintiff was a foreseeable user of the product.

40. Plaintiff purchased the product from the defendant Depuy.

41. The product failed while being used for its intended purpose, causing injury to plaintiff.

42. As a direct and proximate cause of this breach, plaintiff has suffered sever physical distress and injury, emotional distress and injury; incurred medical and other expenses; suffered shame, humiliation and the inability to lead a normal life; and he has suffered loss of enjoyment of life. His

injuries and losses are permanent in nature and plaintiff will continue to suffer such losses in the future.

**WHEREFORE**, plaintiffs demand judgment against defendants for compensatory damages and any other relief that the Court deems just and proper.

## COUNT FOUR
## BREACH OF EXPRESS WARRANTY OF DEPUY ORTHOPAEDICS INC.

43. Plaintiff re-alleges paragraphs 1-43 as if fully stated herein.

44. Defendant Depuy Orthopaedic, Inc., designed manufactured, labeled, distributed and sold the Depuy ASR Acetabular Cup at issue in this case.

45. Defendant Depuy expressly warranted by affirmation, promise, description, and sample that the product was reasonably fit for extended, safe use in a hip joint replacement system.

46. The above representations made by defendant Depuy was meant to directly or indirectly induce persons such as plaintiff and plaintiff's orthopedic surgeon to purchase the Depuy ASR Acetabular Cup.

47. Plaintiff purchased the product from defendant Depuy Orthopaedics, Inc.

48. The product failed while being used for its intended purpose, causing injury to plaintiff.

49. As a direct and proximate cause of this breach, plaintiff has suffered sever physical distress and injury, emotional distress and injury; incurred medical and other expenses; suffered shame, humiliation and the inability to lead a normal life; and he has suffered loss of enjoyment of life. His injuries and losses are permanent in nature and plaintiff will continue to suffer such losses in the future.

WHEREFORE, plaintiffs demand judgment against defendants for compensatory damages and any other relief that the Court deems just and proper.

## COUNT FIVE
### STRICT PRODUCTS LIABILITY/DEFECTIVE DESIGN OF DEPUY ORTHOPAEDICS INC.

50. Plaintiff re-alleges paragraphs 1-49 as if fully stated herein.

51. Depuy is the manufacturer and/or supplier of the Depuy ASR Acetabular Cup and placed this device into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Depuy ASR Acetabular Cup.

52. The Depuy ASR Acetabular Cup manufactured, marketed, distributed and/or supplied by Depuy was defective in design or formulation in that, when the medical device left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

53. The Depuy ASR Acetabular Cup was expected to and did reach Plaintiff, Elliot Guerin without substantial change in condition. Alternatively, the Depuy ASR Acetabular Cup manufactured and/or supplied by Defendants was defective in design or formulation, because when the Depuy ASR Acetabular Cup device left the hands of Defendants, the manufacturers and/or suppliers, the Depuy ASR Acetabular Cup was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

9

54. The Depuy ASR Acetabular Cup was designed and/or manufactured in a manner violative of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 et seq., and Medical Devices Amendment thereto (hereafter FDCA). The facilities or controls used by Defendants in the manufacture, packaging, storage, or installation of the Depuy ASR Acetabular Cup were not in conformity with applicable requirements of the FDCA.

55. The Depuy ASR Acetabular Cup manufactured and/or supplied by Depuy was defective due to inadequate warnings and/or inadequate trials, testing, study, inadequate exposure of the real risks inherent with the drug as determined by the clinical trials, and inadequate reporting of the results of the clinical trials and post-marketing clinical experiences with the device.

56. The Depuy ASR Acetabular Cup manufactured and/or supplied by Depuy was defective due to inadequate post-marketing warnings or instructions because, after Depuy knew or had reason to know of the risk of injury from the Depuy ASR Acetabular Cup, it failed to provide adequate warnings to the medical community, patients, and the public, including plaintiff, and continued to promote and advertise the Depuy ASR Acetabular Cup as safe and effective.

57. The Depuy ASR Acetabular Cup was designed, manufactured, distributed, tested, sold, marketed, and advertised by Depuy. As a direct and proximate cause of Depuy's defective design in their ASR Acetabular Cup, plaintiff, and other patients had the device implanted in their bodies, and suffered and will continue to suffer increased risk of long term

complications and pain and additional surgeries, personal injuries, the need for corrective surgery, and pain and suffering.

58. Depuy was or should have been in possession of evidence demonstrating that the Depuy ASR Acetabular Cup caused serious injuries and would fail. Nevertheless, Depuy Orthopaedics Inc., continued to market the device by providing false and misleading information without regard to the safety and efficacy of the Depuy ASR Acetabular Cup.

59. Depuy Orthopaedics Inc.'s actions, as described above, were performed willfully, intentionally and with reckless disregard for the rights of Plaintiffs, other patients and the public.

60. As a result of Depuy Orthopaedics Inc.'s conduct, Plaintiff suffered losses, injuries and damages specified herein.

**WHEREFORE**, plaintiffs demand judgment against defendants for compensatory damages and any other relief the Court deems just and proper.

## COUNT SIX
### STRICT LIABILITY FAILURE TO WARN AND INSTRUCT OF DEPUY ORTHOPAEDICS, INC.

61. Plaintiff re-alleges paragraphs 1-59 as if fully stated herein.

62. At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing, and sale of the Depuy ASR Acetabular Cup. Defendants designed, manufactured, assembled and sold the Depuy ASR Acetabular Cup to medical professionals and patients knowing that they would be implanted in patients in need of hip prosthesis.

63. Defendants distributed and sold the Depuy ASR Cup in the condition in which it left its place of manufacture, in its original form of manufacture, which included the defects described herein. The Depuy ASR Acetabular Cup was expected to and did reach plaintiff Elliot Guerin, without substantial change or adjustment in its condition as manufactured and sold by Defendants.

64. The Depuy ASR Acetabular Cup designed, developed, tested, manufactured, marketed and sold or otherwise placed into the stream of commerce by the Defendants was in a dangerous and defective condition and posed a threat to any user or consumer of the Depuy ASR Acetabular Cup. Plaintiff was and is a class of persons that Defendants should have considered to be subject to the harm caused by the defective nature of the Depuy ASR Acetabular Cup.

65. The Depuy ASR Acetabular Cup was implanted and used in a manner for which it was intended. This use has resulted in severe physical and emotional and other injuries to Plaintiff.

66. Defendants knew or should have known through testing, adverse event reporting, or otherwise, that the Depuy ASR Acetabular Cup created a high risk of bodily injury and serious harm. Defendants failed to provide adequate and timely warnings or instructions regarding the Depuy ASR Acetabular Cup and its known defects. Defendants failed to advise patients like Elliot Guerin that monitoring of the cup was necessary to

avoid long and painful period, where the device failure would go undetected-as it did here.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Elliot Guerin has sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages. As a direct result, Plaintiff expended money and will continue to expend money for medical bills and expenses. Plaintiff has lost his ability to earn wages and will suffer significantly impaired capacity far into the future. Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

**WHEREFORE**, plaintiffs demand judgment against Defendants for compensatory damages and any other relief the Court deems just and proper.

## COUNT SEVEN
## LOUISIANA PRODUCST LIABILITY ACT

68. Plaintiff re-alleges paragraphs 1-67 as if fully stated herein.

69. Defendants' defective product proximately caused damage to the Plaintiff which said damage was caused by a characteristic of the product that rendered it unreasonably dangerous arising from a reasonably anticipated use of the product by the Decedent, thus rendering Defendant liable to the Plaintiff pursuant to LSA-R.S. 9:2800.54.

70. The product in question is unreasonably dangerous for the following reasons:

a. It is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

b. It is unreasonably dangerous in design as provided in R.S. 9:2800.56;

c. It is unreasonably dangerous because an adequate warning about the product was not provided as required by R.S. 9:2800.57;

d. It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

71. The characteristics of the product that render it unreasonably dangerous under R.S. 9:2800.55, et seq. existed at the time the product left the control of the manufacturer or resulted from a reasonably anticipated alteration or modification of the product.

72. For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous in construction and composition because, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product, or from otherwise identical products manufactured by the same manufacturer.

73. For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous in design at the time the product left its manufacturer's control in that:

a. There existed an alternative design for the product that was capable of preventing the Plaintiffs'' damage; and

    b.    The likelihood that the product's design would cause the Plaintiffs'' damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

74.    For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous because an adequate warning about the product had not been provided and at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide adequate warning of such characteristic and its danger to users and handlers of the product.

75.    Further, the Defendants, after the product left their control, acquired knowledge of a characteristic of the product that may cause damage and the danger of such characteristic (or, alternatively, Defendants would have acquired such knowledge if it had acted as a reasonably prudent manufacturer), and thus is liable for damages suffered by Plaintiff which arose as a consequence of Defendants' failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users.

76.    Plaintiff, Grace Guerin, files a claim for loss of consortium.

77.    To the extent the "learned intermediary" doctrine applies, Defendants are liable to the Plaintiffs for failure to warn Plaintiff's physicians of the known dangers of implementation of the device and/or proper procedures to implement the device.

## DEMAND FOR JURY TRIAL

78. Plaintiff demands a jury trial on all issues triable.

**WHEREFORE**, Plaintiffs pray that upon final determination of these causes of action Plaintiff receive a judgment against Defendants Depuy Orthopaedics, Inc. and Johnson & Johnson Services, Inc. as follows:

(a) Actual damages as alleged, jointly and/or severally against Defendants including but not limited to (1) Reasonable and necessary medical expenses incurred in the past, (2) Reasonable and necessary medical expenses reasonably likely to be incurred in the future, (3) Conscious physical pain and suffering experienced in the past, (4) Conscious physical pain and suffering reasonably likely to be experienced in the future, (5) Mental anguish in the past, (6) Mental anguish likely to be experienced in the future, (7) Physical disfigurement in the past, (8) Physical disfigurement likely to be experienced in the future, (9) Physical impairment in the past, (10) Physical impairment likely to be experienced in the future, (11) Loss of earnings in the past, (12) Loss of earnings/earning capacity likely to be experienced in the future, (13) Pre and post-judgment interest at the lawful rate, (14) Such other applicable damages as the Court deems appropriate.

(b) Costs of court and reasonable attorney fees necessary for preparation of this case for trial;

(d) All such other and further relief at law and in equity to which Plaintiff may show to be justly entitled.

**MARTZELL BICKFORD & CENTOLA**

/s/ *Lawrence J. Centola, III*
**SCOTT R. BICKFORD T. A. (#1165)**
**LAWRENCE J. CENTOLA, III (LA 27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:       (504) 581-9065
Facsimile: (504) 581-7635
Email:    usdcedla@mbfirm.com

17